# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 18-10026-02-EFM

KENNETH CADE,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Suppress (Doc. 60). Kenneth Cade argues that the affidavit supporting the search warrant for Janet Case's home contains statements obtained illegally, either through Cade's illegal arrest or Case's coerced interview. Although Cade's arrest was illegal, Case's statements were voluntary and the affidavit contains no material statements derived from Cade's arrest. Therefore, the affidavit incorporating those statements was legally able to establish probable cause for the issuance of a search warrant.[1] For those and the following reasons, the Court denies the Motion.

---

[1] As an aside, the Court finds that, even without Cade or Case's statements, the affidavit would have contained enough information to establish probable cause for the issuance of the search warrant.

## I. Factual and Procedural Background

Kenneth Cade and Savannah Cole are charged with committing four armed robberies between November 2017 and February 2018. On February 15, 2018, detectives learned that Cade and Cole might be temporarily residing at Janet Case's home at 4315 E. Bayley. Officers immediately monitored the home for signs of Cade. After a short while, a red SUV arrived at the Bayley residence. Two people matching the descriptions of Cade and Cole exited the SUV and entered the home. The officers did not have a valid arrest warrant, so they attempted to obtain one. Their efforts were unsuccessful.

Without an arrest warrant, ten officers approached the residence to do a "knock and talk," and to confirm the identity of Cade and Cole. It was evening and therefore dark outside. As the officers were approaching, Cole unexpectedly exited the home to empty the garbage. At this moment, Officer Boatright approached Cole, quickly requesting to ask her questions. The exchange was very brief. Without answering, Cole dashed back inside and quickly slammed the door. At roughly the same time the door shut, Officer Boatright shouted "stop." Officer Boatright then kicked the door several times before backing away.

At this point, the other officers had fully surrounded the residence. Cade's mother, Janet Case, opened the door and asked who was there. After seeing the officers, Case informed them that young children were inside the home. Case and one child exited the home, and officers escorted the child to the side. Officers then saw Cade and Cole inside the home through the open door. The officers commanded Cade and Cole at gunpoint to exit the home. Cade and Cole subsequently exited the residence and the officers arrested them.

Case permitted the officers to do a protective sweep of the home. She then agreed to accompany them to the Wichita Police Department headquarters for an interview. At the police station, Case waited approximately ten minutes in an interview room before Detective Davis arrived to interview her. The detective interviewed Case for twenty minutes, during which she made incriminating statements about Cade and Cole. After the interview, Case waited for roughly forty-five minutes before an officer escorted her to her daughter's home.

Cade seeks to suppress evidence gathered from Case's home on February 15 pursuant to a search warrant. Cade alleges that the officers violated his Fourth Amendment rights by arresting him without a warrant, and his Fifth Amendment due process rights by coercing Case into giving an involuntary statement. Cade argues that statements obtained via these two methods supported the affidavit used to establish probable cause for the search warrant.

## II. Legal Standard

### A. Exigent Circumstances

Absent a warrant, or probable cause plus exigent circumstances, law enforcement officers cannot enter a home to arrest a suspected criminal.[2] The Parties do not dispute the presence of probable cause in this case. Generally, exigent circumstances arise when (1) the officers have reasonable grounds to believe that there is immediate need to protect their lives or the lives of others, or their property or that of others, (2) the search is not motivated by an intent to arrest and seize evidence, and (3) there is some reasonable basis, approaching probable cause, to associate an emergency with the place to be searched.[3] The Government bears the burden of establishing

---

[2] *Payton v. New York*, 445 U.S. 573, 653 (1980).

[3] *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992).

that exigent circumstances made the warrantless entry necessary.[4]  Relevant to this case, the Government specifically alleges that three exigent circumstances existed: (1) an ongoing "hot pursuit;" (2) the chance of imminent destruction of evidence; and (3) a threat to officer safety.[5]

**B.      Fifth Amendment Due Process**

Generally, a defendant cannot suppress evidence obtained pursuant to a warrant based on a third-party's statement.[6]  However, in *United States v. Gonzalez*,[7] the Tenth Circuit permitted a defendant to challenge the voluntariness of a third-party's statement to police, because that statement potentially implicated the defendant's Fifth Amendment due process rights.[8]  Specifically, a defendant's "due process rights would be implicated if the subject witness was coerced into making false statements and those statements were admitted against [the defendant] at trial."[9]  The court noted that a statement is involuntary if the government's actions caused the witness's will to be "overborne" and "his capacity for self-determination critically impaired."[10]  Courts determine whether a statement was freely and voluntarily given based on the totality of the circumstances.[11]  The relevant circumstances embrace "both the characteristics of the accused and

---

[4] *United States v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008) (citing *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998)).

[5] *Georgia v. Randolph*, 547 U.S. 103, 116 (2006) (mentioning these three specific exigencies among other possible exigencies).

[6] *Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted").

[7] 164 F.3d 1285 (10th Cir. 1999).

[8] *See id*.

[9] *Id*. at 1289.

[10] *Id*.

[11] *Arizona v. Fulminante*, 499 U.S. 279, 285–86 (1991).

the details of the interrogation."[12]  Relevant factors include the suspect's age, intelligence, and education, the length of detention and questioning, the use or threat of physical punishment, whether *Miranda* warnings were given, the accused's physical and mental characteristics, the location of the interrogation, and the conduct of the police officers.[13]

### III.    Analysis

**A.    Exigent Circumstances**

   *1.    Hot Pursuit*

The Court finds that the Government has not met its burden to prove Cole subjectively knew she was pursued by a law enforcement officer at the time she fled from the encounter with Officer Boatright.  As such, the Government has failed to establish the exigent circumstance of "hot pursuit."  In *United States v. Santana*,[14] the Supreme Court applied the hot pursuit exigency when a suspect briefly exited her home, officers shouted at her, clearly identifying themselves, and the suspect recognized the officers and fled back into her home.[15]  The court held that the suspect's doorway was a public place, and because the officers had probable cause, they were permitted to arrest her without a warrant.[16]  The court stated that the suspect could not defeat an otherwise proper arrest that had been set in motion in a public place by retreating into her home.[17]  In

---

[12] *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir.1998).

[13] *Id*. at 1311.

[14] 427 U.S. 38 (1976).

[15] *Id*. at 41.

[16] *Id*. at 42.

[17] *Id*.

justifying this determination, the court focused on the fact that the suspect's rapid retreat into the home also created the exigent circumstance of destruction of evidence.[18]

In this case, the Government argues that the hot pursuit exigency applies because of the brief encounter that Officer Boatright had with Cole when she stepped outside to empty the trash. However, the facts in this case differ from those in *Santana.* It is not clear that Cole knew that Officer Boatright was indeed a police officer when she was approached by him in the dark. The encounter occurred at night, in an area with limited lighting. The officers, including Officer Boatright, were dressed almost entirely in black. Although the officers wore vests with "POLICE" written on the front in white, the encounter with Cole was so brief, and so apparently and justifiably startling, that she reasonably may not have identified Officer Boatright in the dark, outside her home. Furthermore, the video evidence captured from the body cameras of multiple police officers indicates that no officer identified themselves to Cole. Officer Boatright shouted "stop" to Cole, but he did not otherwise identify himself as a law enforcement officer. Additionally, he shouted this as Cole shut the door, making it quite possible that she did not hear him. These circumstances show that it is unlikely that Cole knew police officers pursued her. The Government has not met its burden to prove that Cole subjectively knew she was being pursued by police at the time of the encounter with Officer Boatright outside the house. As such, the Court finds that there was no exigent circumstance created by hot pursuit.

2. *Destruction of Evidence*

The Court finds that there was no threat that someone would destroy the evidence inside Case's home. The evidence suspected to be inside the home at the time the officers encountered

---

[18] *Id.* at 43 (the evidence at issue was a bag of heroin, which the court noted was easily destroyable).

Cade is not easily or quickly destroyable. The relevant evidence was a coat, a purse, and firearms. These items are not analogous to portable, disposable illegal substances, which represent the typical destruction of evidence exigency cases. No one inside the home could have quickly destroyed the evidence at issue. As such, the Court finds that there was not an exigent circumstance created from the threat of Cade's destruction of evidence.

   3.   *Officer Safety*

The Court finds that there was no viable threat to officer safety that gave rise to an exigent circumstance. In *United States v. Walker*,[19] the Tenth Circuit stated "[The officer safety doctrine] creates an exception to the general prohibition of warrantless entries when (1) the officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others, and (2) the conduct of the entry was reasonable."[20] In that case, the police officers performed a "knock and talk," carefully approaching the defendant's door, knocking on it, and announcing their presence and identities.[21] The defendant immediately responded by threateningly stating that he possessed a firearm.[22] Under those circumstances, the officers reasonably assessed that they were in imminent danger and acted accordingly by entering the home without a warrant.[23]

This case differs from *Walker* in multiple ways. Here, the officers did not perform a "knock and talk," nor did they clearly identify themselves in another manner. As a result, it is unlikely

---

[19] 474 F.3d 1249 (2007).

[20] *Id*. at 1253.

[21] *Id*. at 1251.

[22] *Id*.

[23] *Id*. at 1253.

that the residents of the house immediately knew that the people outside were law enforcement officers. Once the residents of the house likely recognized the officers (which the Court assumes happened promptly after Cole shut the door), the officers were still not under threat of immediate harm. They could have deescalated the situation, fallen back, and secured the home with a wider perimeter. They could have kept a reasonable distance while announcing their presence to those inside the home. Furthermore, if the officers felt there was a serious threat to their safety, Officer Boatright likely would not have approached the door to kick it several times. Taken together, these facts indicate that there was not a threat to the officers' safety. The Court finds that the Government has failed to meet its burden to prove that an exigent circumstance existed under the officer safety doctrine.

    *4.*   *Illegal Arrest of Cade*

The Government has failed to carry its burden to prove that exigent circumstances existed under its proposed theory of hot pursuit, threat of evidence destruction, or threat to officer safety. Since the Government did not otherwise have a valid arrest warrant, the arrest of Cade was illegal.

Cade seeks to suppress evidence gathered from the search of Case's house, because the supporting affidavit contained statements obtained illegally. However, there are no statements from Cade in the affidavit supporting the search warrant. Cade alternatively argues that the evidence should be suppressed because the search warrant was supported by statements Case made involuntarily. The Court will now consider whether that argument is credible.

**B.**  **Voluntariness of Witness Statement**

Generally, a defendant cannot suppress third-party statements.[24] However, Cade argues that Case involuntarily testified to detectives, infringing on Cade's due process rights. Cade has the burden to prove that those statements were in fact involuntary.[25] The Court concludes that Cade has failed to carry that burden of proof.

The facts in this case do not meet the legal standard enunciated in *Gonzalez*, with even less indication that officers coerced Case into involuntarily testifying.[26] The police asked Case to accompany them to the police station; she did not have to comply. The officers did not use a show of force to intimidate her into accompanying them. No one ever stated, or even suggested, that Case was under arrest. No one gave Case *Miranda* warnings. The officer that escorted Case to the police station did not handcuff her, and she sat in the front of the patrol car with him. When they arrived at the police station, Case briefly waited in a typical witness interview room. Although the table in this room had handcuffs permanently affixed to it, the officers did not handcuff or restrain Case.

Case waited a brief time, after which Detective Davis interviewed her. He did not threaten her with arrest, nor did he state that she could leave only after answering his questions. When Case mentioned that she wanted her medication, Detective Davis asked if they should take a break to allow her to retrieve it. She dismissed this conciliation, informing him that the medication was back at her house. The interview only lasted approximately twenty minutes. Finally, nothing

---

[24] *See Gonzalez*, 164 F.3d at 1289.

[25] *See id.*

[26] *Id.* at 1288 (the Tenth Circuit held that, although the arrest warrant and escape clause would have been unduly coercive, the fact that the witness did not know of the clause until after she testified vindicated the voluntariness of the testimony).

about Case's age, intelligence, or education suggest she would be particularly susceptible to police coercion.

For the foregoing reasons, the Court finds that Case's statements were voluntary. Therefore, Cade's Fifth Amendment due process rights were not violated by Case's interview with law enforcement officers. Cade argues that Case's statements supported facts in the affidavit establishing probable cause to search the house. But the Court finds that even if it removed those statements from the affidavit, there would nevertheless be more than enough information in the affidavit to support probable cause. As a result, even though Cade's arrest was illegal, the Court will not suppress any of the evidence gathered from the search of Case's home.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 60) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 18th day of January, 2019.

                                           s/ Eric F. Melgren
                                           ERIC F. MELGREN
                                           UNITED STATES DISTRICT JUDGE